versus Laboratory Corporation of America, Mr. Finkel. Good morning, your honors. May it please the court, my name is Robert Finkel from Wolfe-Popper for the point of suppellants. With me from my firm is Tim Brennan and John Sasser from Ellison Winters in North Carolina. This appeal concerns a standard form consumer contract entitled the Patient Acknowledgement of Estimated Financial Responsibility. It is provided to patient service centers and it purports to advise plaintiffs of their financial responsibility for testing, both to some extent if the test is covered by insurance and also it refers to the fact in small print that the estimate if the test is covered by insurance does not apply if the test is not covered by insurance. Now, when we did our brief, we were told by the printer that we couldn't append the specimen of the form to the brief because it was too small and your honors would have difficulty reading it. But it's in the record at JA5354 and I have and I'd like to go through the form because the entire case can be determined by reviewing the form and as I will say, even though in small print it says that insurance may not cover the test, it never says what the rate would be charged if insurance doesn't cover the test. It only says that the rate, and it doesn't even say this, but it does say in some sense that the rate may be higher, but in fact the patient list price is usually funny money. It's usually seven to ten times. I mean in this case, we can go through the form, we can deal with these facts, but it really comes down to what you just said there, isn't it? I mean the fact that you've got two different states that are dealing with their particular acts, does it fit within either one of those as a material fact? And the question is, is you've got this list price that's different than, well, it's encompassed in this general statement that it could be higher, but it's a material fact. If you know, basically you know that's what you're going to use is that list price, and in fact, when there's no insurance, you're going to pay, I guess, up to 10, 15 times more. Is that? Yes, that's correct. So I'm not trying to disseminate your case too simple, but I mean, we can go through a lot of stuff, but isn't that kind of where you are in terms of that that is violative of those two acts there in those two different states? Absolutely, and in Nevada, there's a specific statute that you can't make a false or misleading statement with respect to price. So is it that cut and dry that if you do not have insurance, you will be charged that list price? Is it that cut and dry, or is there something more complex in terms of that pricing scheme? Well, for purposes of the complaint, the allegations, the well-put allegations are assumed to be true, and we plead that if So that is fundamental to our determinations. We're on 12B6, and you say, we've got to take what you said in that complaint, and that's what you say it is that, and we don't get to look at other stuff like whether there's some other outside. Well, there's nothing in the record other than speculation from the court that other rates may apply, but there's nothing either from So what you're saying, what I'm trying to get, you know, because we can't, it's really not argumentative, it's really either in the record or it's not in the record. That's the key. We can go back and forth whether or not it's in the record or not, but it either is in there or not, and then the question is, what does, what's alleged in that complaint, and what's there, do we take that as true? Is it sufficient to be That's right, Your Honor, but the only thing that's in the record is the complaint, because like you said, it's a 12B6 motion. We're agreeing on that. I mean, we're agreeing at least that the record, not that that's the only thing, we're agreeing that the record controlled, but that's before us. We're the appellate court. We got that record. We, you know, you can go back and forth as to what's in there, but we're going to see that. So if it gets down to it, if there's nothing in the record but the complaint, and the complaint says this, then we have this list price plus what this language allowed, and then isn't that issue still as to whether that's a material fact under these state laws, even if it is? Well, in answering that question, it appears to me that in Nevada, there are two possibilities for your claim. One is it fails to, it omits a material fact, and separately, it's a misrepresentation. Florida doesn't seem to be quite that clear. It talks about violating public policy, unethical oppression, that sort of stuff. So I'm wondering whether we can apply the same analysis in both states. Well, Florida is a generic state, and the statute says that it's intended to follow the Federal Trade Commission Act, and there's a lot of case law under the Federal Trade Commission Act. There are some differences in the two statutes, but both statutes are objective as to what a reasonable patient would In the complaint, we allege that Nolan looked at the form and asked, you know, what does this mean, and was told, you'll pay less than $50. It's in the complaint, the actual words. I don't recall, but we quoted from the client what he told me the LabCorp patient technician said. Do you contest, because I'm assuming these acknowledgment forms are referenced in the complaint so that the District Court and we could consider them, Do you contest for either plaintiff that they did represent LabCorp, that they had insurance? Not necessarily that insurance would cover it, but this is not a case of an uninsured patient. That's correct. They both had insurance cards. They provided it to LabCorp, and the form says insurance eligible. But they didn't represent... It also says I agree to be personally and fully responsible for charges from today's services that are not covered by my health line, correct? Yes, but you have to read the sentences before that in order to understand that statement in context, and I believe, Judge Thatcher, you're referring to the last sentence of the first block quote before the signature. Right, the last thing you read before you sign it. So I just want to go over, because these words are very significant, and it's on, I have page JA-54, it's Exhibit A to the complaint. I don't know if you have that in front of you, Your Honors. But it says, I'll read the first sentence of the last paragraph for completeness. By signing below, you acknowledge I want the laboratory tests listed above to be performed. Okay, then it says my health plan will be billed for the applicable charges. Now, this is a form that LabCorp has been using for some time. Applicable charges is not a defined term in the agreement. The only charge that's referred to is the health plan allowed rate, which for the vitamin D is about $18. Now, this is obvious. It's a small print form. It's given to a patient right before he has the test. It's a small print. I mean, some prints smaller than others, but except for the headings, the print appears to be fairly uniform. Right, but the headings are the ones that are intended to induce reliance in the patient. The headings say this is your estimated financial responsibility, and in big print it says $43.91. Now, the cautionary statements, which LabCorp doesn't want the patient to read, is small print. I mean, there's no doubt. But the affirmative statement that gives you confidence that this test is going to be at a relatively low cost are prominent on both pages. It's just the exculpatory language is small. What are the prominent, what's the prominent language you're talking about? Well, the first page, it says patient acknowledgement of estimated financial responsibility. And then it says summary of estimated charges. This is on page JA-53. And then it gives, and then it says your out-of-pocket expenses, and the total is $43.91. Now, to the left, an italicized text, which is smaller than the language summary of estimated charges, substantially smaller. It says this estimate assumes all services will be covered. Now, that's not meaningful to somebody of average intelligence who's not an expert in lab testing, who has insurance that's prescribed by his doctor. It also says, as outlined above, and now I'm on JA-57, I'm reading the rest of what you had stopped reading. As outlined above, I understand that my health plan may not pay for these tests at 100%. The amount I may have to pay may be different than the estimated amount. And then I agree to be personally and fully responsible if it's different. But the question is- And as Judge Agee points out, all of that, most everything on these forms is the same font. It's small, but it's the same font, except for the estimated financial responsibility and acknowledgement of an estimated financial responsibility headers. Except- The key word there seems to be estimated. Well, except that, vitamin D has a patient-less price. It's $292. That's a material fact compared to the $18. When LabCorp says, I agree to be, it says, my health plan may not pay for this test at 100%, it doesn't say 100% of what. And the only price that's disclosed is the health plan allowed rate. So a reasonable person would say- If the insurance covered the test, then what's here would be accurate. That's correct. But it doesn't say that there's- Okay. Well, in looking at these patient acknowledgement forms, is your argument that they've omitted a material fact because you allege they know what the upper limit of the charge would be if the insurance doesn't cover it, or that there's a misrepresentation of something? Well, there's both. Those are two distinct avenues in this cause of action. Well, it's both because- All right. Tell us why, first, it's a misrepresentation. Well, because it says, my health plan will be billed for the applicable charges. Now, in fact, the health plan gets billed for the patient-less price. This says applicable charges, and the only price that's indicated on the form is a health plan allowed rate, and then it says, I understand that my health plan may not pay for this test at 100%, but if it's a non-covered test, they pay for the patient-less price zero. So the context of this document is clearly relating only to the health plan allowed rate, and it says the amount I may have to pay may be different than the estimated amount. So it's saying to me, to a person of average intelligence, there's only one rate, it's the health plan allowed rate, and that if insurance doesn't pay the full health plan allowed rate, then I'll have to pay part of it. But it never says- A patient in America who, having dealt with their insurance, doesn't know that insurance may not cover the test, and if it doesn't, they're going to have to pay more. Yes, there are. Well, where are they? I certainly don't know any. Well, I mean, there are people who, unlike you and I, didn't go to law school. So, and there are people who the amount of money that's involved is very significant to them. And I, when I got involved with this, I was very surprised that if I have insurance, and insurance doesn't cover the test, I don't get the benefit of the rate that the insurance company negotiated with LabCorp. You're saying the problem, the deception is that the patient-less price is nowhere on this patient acknowledgment form. Is that- It's not only nowhere on the form, but it's not even alluded to as being a separate price. The only price is the health plan allowed rate. And it says, and it's very telling in the judge's opinion, he doesn't use the word applicable charges other than when he quotes the language. And in LabCorp's brief, they don't refer to the definition of an applicable charge. Now, if LabCorp wanted to be truthful, they know how to be truthful. And they could say my health plan will be billed the patient-less price, which is significantly higher. Your answer to my question was that that's the problem, that the PLP is not on there and nowhere alluded to. That's correct. That's exactly right. You're over time. All right. You've got some rebuttal time, Mr. Finkel. So we will now hear from Mr. Bazell. Yes, Your Honor. Thank you. May it please the court. My name is Scott Bazell. I represent the Appley Laboratory Corporation of America. I'm joined today by my colleague, Stephen Carey. So is there a difference between the causes of action in Nevada and Florida? Your Honors, I think there are some differences in the statutes in the margins. But where it comes to the reason why these claims fail fundamentally, I think it's the same under both statutes. Because, Your Honor, there is nothing unfair or deceptive about the patient acknowledgement. It is a truthful and accurate document. And I want to address the two main... What about the fact that the patient list price is not on the form and not alluded to and can, in some instances, be much higher than what's listed? Yes, Your Honor. And there's two main points I'd like to raise. First of all, we heard a lot from Mr. Finkel about, as he states in there, that the complaint in one place states that LabCorp knows that if insurance does not cover the test, that patient would be billed the patient list price. Your Honor, that statement, which has no factual allegations in support of it, certainly none to meet the heightened pleading requirements of Rule 9b, that is directly contradicted by the other allegations in the complaint. LabCorp does not... So in paragraph 4, where they allege LabCorp had actual knowledge at the time and failed to disclose to Nolan that if his insurer denied coverage, he would be billed $292. Correct. So we have to take that as true at this point, do we not? Your Honor, this court does not... But then paragraph 72, when the LabCorp representative is asked, they say, no, you'd only have to pay $50, which indicates maybe they don't know that you'd have to pay the fullest price. And Your Honor, let me directly address that. Let's go to the record, JA-22, paragraphs 48 and 49 of the complaint. The plaintiffs there, in their complaint, acknowledge that LabCorp does not know that if insurance is denied, if insurance denies coverage... Which specific paragraph are you in now? Your Honor, I would like to start, first of all, with paragraph 48. The plaintiffs acknowledge in there that the ultimate price a patient may owe, Your Honor, they say in there, is determined during the claims adjudication process. Now, the claims adjudication process occurs long after testing, many times weeks, four to eight weeks after testing. And Your Honors, if there is no coverage, that does not mean that a patient will be billed the patient list price. It could be a myriad of other prices. Plaintiffs explain this in paragraph 49. There, the complaint admits that the insurance company will decide whether to deny or also reduce payment to LabCorp. It is not simple in the insurance industry as a two-price system. Either you have your deductible coinsurance and copay, or you have your patient list price. Even in there, Your Honor, the reason and what LabCorp can charge depends on the specific health plan and the reason for the denial. The plaintiffs, in paragraph 49, list examples of that. The extent of coverage allowed, the medical necessity determination of the test, whether the test is deemed experimental or investigational. So, Your Honor, in there, because of the complexity of the insurance industry and how this works after testing, the allegations of plaintiff's complaint acknowledge that this is not a simple binary system where there's only two potential charges. And that is what, when Mr. Finkel was referencing the district court's opinion, Judge Schroeder was making an observation. So, is your argument that the complaint contradicts itself? Your Honor, I am arguing, my argument on there is they do state, and I'm acknowledging that they state in there, a conclusion that LabCorp would have knowledge. There are no factual allegations to support that LabCorp would know it would bill a patient list price. The factual allegation is that you have a price list. They allege that you've got a price list and that it's going to be that price list that counts. In the latter paragraphs, addressing the situation where it's the nature of the business, LabCorp doesn't determine, as I understand, whether you have insurance before they conduct a test. It seems to me, you go and conduct a test, then you see if you can get paid by insurance. Is that the way it works? That's the way the insurance industry works. So, I mean, think about that. You go and do something, and you don't know how it's going to be paid. And it's the choice of doing that is the choice of LabCorp to not determine, pre-doing it, whether you can get paid or not. You're just going to do the test. Maybe that's expediency, maybe it's for the time and whatever. Then you do the test. Then you get into the business of, well, now they're not paying. And the result being, and the complaint here, is really the differential. You've got on this form this $43.91, big bowl all over the place. You only charge a credit card for $43.91. All of this is going through, tiny print, all the same size, and they're telling you, well, it could be higher, could be higher. But you've got this price list. And you've got vitamin D, for instance, where they do allege this. That's almost always denied. You know that. You have to have some idea that they're going on. They make that allegation. And the end result is, instead of $43.91, you get a payment that doesn't look anything like $43.91 on it. So that's, you know, where we are is 12B6. And answer Judge Age's question as to, are you saying that that's contradicted? And they are, in other words, equally contradicted? When they say, you have to pay this list price, but then it comes back and says, can it be reduced? Are you saying that's a contradiction within the complaint so that under 12B6, they lose there? No, Your Honor. The contradiction discussion is that they make a statement in there that LabCorp somehow knows that a patient will be billed the patient list price. The complaint itself, when you look at the factual allegations on JA-22, they acknowledge that the ultimate price a patient will be charged is not determined until weeks later during the insurance adjudication process. And it depends on a host of factors. And those are your program, no way 849? Yes, Your Honor. I'd also like to turn to the purpose of the form and what the form says. I'm sorry, one last question before you leave that. Is your argument on paragraphs 4 and 9, where the allegation is that LabCorp had actual knowledge, that that's deficient under Twombly because there's no additional factual allegation? Your Honor, what we're saying is that this court has held, Your Honor, that we do not need to accept true or accept as true allegations that contradict other matters in the complaint, which is the Vinnie decision for Circuit 2000. Which goes back to Judge Agee's question about is the complaint inconsistent with itself? Oh, absolutely, Your Honor. The factual allegations do not support the conclusion that LabCorp would know that someone would be charged. Because you're saying 4 and 9 are inconsistent with paragraphs 48 and 49? Correct. What about paragraph 72? What are we to make of that? That says, before taking Nolan's blood, LabCorp's representative confirmed consistent with the written representations in the patient acknowledgement. Don't worry about it. Your estimated responsibility is less than $50. And, Your Honor, on there... That sort of shows that maybe LabCorp didn't know about, to your point, did not know what the PLP would be. But to his point, it's also deceptive. Your Honor, I think... I don't know what to do with that paragraph. But, Your Honor, I think on there, we'll look at what they were referring to on the form itself. And to take just one step back on the patient acknowledgement, what is the purpose of the acknowledgement and what does it say? The patient acknowledgement is provided to patients who come to LabCorp who they don't pay for their tests that day. Instead of paying for LabCorp for their tests that day, which would otherwise be required, they instead present insurance. And insured patients often assume that if their health plan covers testing, that they will owe nothing. So the patient acknowledgement is provided as a helpful aid who come to LabCorp and represent that they have health plan and have health insurance, that they still may owe money, even if their health plan covers the test. And what does it estimate? Is there a price if they come and say, we don't have insurance? Yes, Your Honor, and it depends on the test. So why did you make the choice of giving them the price that if they do have insurance, but don't tell them if you don't have insurance? Because you don't know if they have insurance. They're just telling you that. Patient comes in and says, I got insurance, here's a card. It's all right. So LabCorp then just says, OK, well, we're going to give you the insurance price. But you already know if you don't have insurance what that other price is going to be. But you don't tell them. Well, to take one step back on there, I disagree with that proposition, Your Honor. And that's because nowhere do the plaintiffs plead. And I think this is a very important point. The plaintiffs do not plead that they could not have gotten information about the price of the test or any other prices in other ways. The complaint is it's not on this specific form. Everything in front of them is telling them you're going to pay this $40 a year or so up here. And that if you've got insurance, this is it. They haven't told you don't have insurance or anything. Just took it, ran with it, said, OK, that's good. And I assume it's in the interest of LabCorp that if you don't have insurance for this, you get 15 times more. Your Honor, on there, and to hit that on the head, this form is provided to insured patients to provide them an estimate. And it states very specific. It's provided to people who say they have insurance, right? Or is it provided to people who are actually insured? Your Honor, it is provided to people who actually present insurance. The numbers on the form don't come from LabCorp. So the difference is not just they can be insured, but what is covered. You don't know that. You can have insurance, but it may not be covered. Yes, Your Honor. So just to be very specific. You don't make that determination as to whether it's covered at that point. LabCorp can never make that determination. That is the insurance company that makes that determination. LabCorp has no part of that. That's done weeks after testing. You know, you would think if the basis, depending on the basis, if LabCorp is in the business of doing tests like vitamin D, you would have some knowledge of, you would know whether or not that's going to be covered. I mean, it's the first two or three times I got it. But if they are denying, as the allegation indicates, that vitamin D or something is going to be denied, you would know that or have, you have a heightened knowledge over theirs that it would be covered. No, Your Honor. And that's what, when Judge Schroeder was observing and also citing case laws from across the districts, this is the uncertainty of health care pricing with the way that it works within the insurance industry. Insured plans differ tremendously. Your Honor, take, for example, UnitedHealthcare. Will UnitedHealthcare determine, will they cover the test or not? Well, Your Honor, United has thousands of different plans. Let me ask one question. You do have a list price. That is correct, right? Patient list price. You have a list price. There is a list price, yes. But you don't disclose or even indicate there is such a thing as a list price. And a list price has a purpose of some type. I mean, if it's a list price, it's what you charge. You know, I know there's language about the possible reducing it. But you have that list price. And you know you have that list price that's there. Isn't that, what's the purpose of the list price? Your Honor, the list price on there is one of many, many prices at LabCorp. So I think the whole issue here. Where is that alleged in the complaint? How do we get there on 12B6 with that? That is one of many. Well, Your Honor, are you talking about, I mean, first of all, the complaint. What do we consider at this stage of the process? That when you say it's one of many, and they allege it's list price. Where is it in the pleadings that says it's one of many? Your Honor, I think that's exactly the part of what a patient is charged. It's going to depend on what the results of the insurance adjudication process. It can be anywhere from zero dollars. It can go up to the list price. And it can be more than the list price. Where does that come from? In the pleadings, 12B6, it can be up to the list price. It can be more. It could be whatever. Where does that come from? Well, first of all, the fact that it can be anywhere from zero to the list price comes from, and that's what's paragraph 48 and 49 of the complaint. The fact that also it can be more than the list price, it comes from the document itself. And Your Honor, after all, this is diagnostic testing. This is the healthcare industry. So when you get one test, Your Honor, as the document itself discloses, it can also trigger other tests based on the clinical indications of test one. It may need to test, it may need to trigger test B or C or D. So all of that, there is great uncertainty. But you know, it just seems like there's a lot of facts coming out of here. You know that with 12B6, it seems like this ought to at least go to the next stage and determine, you've got a list price that has to have some meaning. It's not just sitting up there. There's some statements, I don't know where it is, complaint or whatever, but it seems like that's what you often use is that complaint. That's what they say used in these two cases here. That list price is what they got. They don't know anything about all this in between and could have been zero. That didn't happen. So I mean, we're at 12B6 on this. So what do we do? Why we got to make all these factual determinations? I don't think there are any factual determinations to make, Your Honor. Because all of these questions, I think, boil down to the fact that the plaintiffs here, and this is an important point, do not plead that they can't learn information about all these other prices in other ways. Like by calling the phone number or looking on the website that's on the patient acknowledgement form? Your Honor, that is some ways. But I think, let me direct the court to the other, if you look at the complaint, in this case, look at paragraph one of the complaint. They reference another case called the Anderson case, which they say is, quote, the related case. So plaintiffs don't plead that they could not have learned or have access to the information about all these other prices we're talking about. Because they couldn't plead that because that was the subject matter of the related case. As I understand the gravamen of Mr. Finkel's argument, it's that LabCorp knew this patient list price for whatever test you want. And that to a reasonable person, that would be a material fact to know before they made the decision to sign on the bottom line that if the insurance didn't cover it, you know, it's not $15, it's $300. And that's a material fact. Now, it might turn out that all the things you've represented are accurate and they could find out somewhere else and all that. But at the 12B6 stage, why wouldn't that be enough and let the rest of it work out at summary judgment? Because, Your Honor, I think, first of all, at the 12B6 stage, if you're going to say that other prices are, and we'll just say need to be disclosed somehow, well, then they need to then plead, especially with particularity under 9B, that they did not have access to that information in other ways. And what's key here is they could not plead that. Because Mr. Nolan and Ms. Wittenberg sought to be class representatives in the other Anderson case. And in that case, the evidence confirmed that LabCorp does not know what ultimate price the patient will be charged and that there are many other charges out there. And, Your Honors, that decision, which was heard in court the same day as the motion to dismiss hearing here involving Mr. Nolan and Ms. Wittenberg seeking to be class representatives, the evidence is summarized on page 9 of the order there. And I can provide the Westlaw site to that, which is 2023 WL1970953. It's an order of the same day, and it involved also the same plaintiff's counsel and the same plaintiffs here. The same day as what? The same day as the oral argument on the motion to dismiss in this case. And, Your Honors, a district court is not required to put blinders on when the evidence involving the same individuals and the same plaintiffs' counsel clearly shows that that allegation is not true. And when the own allegations of the complaint, all the other factual allocations, are directly inconsistent with that. This case is, it is a false premise that LabCorp knows that a patient will be charged the patient list price if the test is not covered. And that's on the record in the Anderson case? Your Honor, the other prices are all in the record on the Anderson case. But I mean the fact that LabCorp does not know what the prices are. Yes, Your Honor. In that case, all of this, we had five years' worth of discovery in that case. And in that case, which this... And it's the same plaintiffs and the same plaintiffs' counsel? There are, Mr. Nolan and Ms. Wittenberg sought to be class representatives. It's the same plaintiffs' counsel. And so are you saying in that other case that it's, we can take judicial notice that LabCorp does not know the patient list price? No, Your Honor. It's not LabCorp doesn't know the patient list price. It's that LabCorp doesn't know what price these people, insured patients who come in and present insurance, what they will ultimately be charged if insurance denies coverage. I don't think he contests that particular point. I think his whole point is that for whatever reason, you had to disclose this patient list price. And I think, Your Honor, I see my time is up and I have just a few seconds. And I think the point is on there that if you were to credit, if the court was to credit the plaintiff's theory and say, well, the patient list price is one potential price out there. So it needs to be on this form. Well, by definition or by extension of that, that means that LabCorp would have to disclose all potential prices. That, Your Honor, would likely be impossible for LabCorp to do that. But, Your Honors, definitely it is not something the law requires health care providers to do. There is not a case that's been cited under Nevada or Florida law that would pose that burden on health care providers in that state. All right. Thank you very much. Mr. Finkel, you've got a couple of minutes here. There are a lot of facts to unpack. So I'll just go through a few of them. Medicare requires that LabCorp disclose the patient list price if Medicare will not cover the test. It's called an advanced beneficiary notice. LabCorp has no trouble when required by Medicare to disclose the patient list price in advance. Does it also require to disclose all these other so-called price lists that's in the other cases there? That's a made-up, you know, with all due respect to Scott, that's a made-up fact. Usually it's either the patient list price or the negotiated rate. There may be a physician that negotiates separately on behalf of their patient, but when we get into the facts, it's very unusual. But it's really binary. So in the case of Medicare, that's a statutory requirement, or where does that come from? It derives from the statute, but I think it's in the Medicare regulations. But it derives from the statute. Paragraph 49 only says that the coverage of a lab test is a function of the medical diagnosis, the health care plan, and the test. Now, the person who's drawing the blood is not going to know whether vitamin D is covered, because that's not her job. But the computer is programmed at LabCorp so that they know they're for their largest providers like Aetna or UnitedHealth. These are negotiated factors. I mean, this goes beyond the complaint, but because Mr. Basil referenced it, I feel compelled to address it. These are negotiated factors. Vitamin D, for whatever reason, the Endocrinology Society has turned negative on the incidence of vitamin D, so it's more of a frequently denied test. But LabCorp internally knows to a high degree of knowledge whether the test is going to be covered or not, because after all, they do tens of millions of these. So all you have to do is run the data and say what percentage of vitamin D tests that were done from UnitedHealth in the last year have been covered by insurance. They certainly know that information. They're a multibillion-dollar company. Your theory, when the patient comes in and they say, I've got United or Anthem or whatever, that they have to get an individualized acknowledgement form for that particular insurance company? No, because, you know, in fact, the health plan allowed rate is already an individualized form, because it's based on the negotiation with that health insurer. But the patientless price, which should be disclosed, is, as LabCorp said in their opposition papers, off the rack. So that is not a variable rate based on the insurance. There just is no reason why in a document that Mr. Basil says is intended to disclose to patients what they'll have to pay for a test, why they don't disclose the alternative rate, which is the PLP. Now, even taking on face value that the test could have a lower cost than PLP, so just disclose the truth. Just say that the test could cost as much as $292. And if LabCorp is not comfortable saying that, what they would do is the patientless He's saying they don't know it. What impact does, I think that's what he's saying, what impact does what happened in the Anderson case have, if any, on your argument? Well, as, you know, I obviously, I reread the class certification decision. Pricing is generally not known to the public. Patientless prices are not generally available. If you go to the patient service center, it's not, it's just not there. If you go to LabCorp's website, it is not there. If you want to call an 800 number and give the medical diagnosis, they'll probably give you the price. But they're only open 8 to 5, Mondays through Friday. And in practice, very few people call. Judge Schroeder felt, though, that some people in the class may have had a test already and got it denied, or maybe their physician told them what the patientless price was. And in his view, under 23B3, common issues didn't predominate and there would have to be individual fact finding with regard to the individual patients. But in terms of a form that is misleading and suggests that if insurance doesn't pay, you'll get a rate based on applicable charges, doesn't say what those applicable charges are and would lead a person of average intelligence to believe that it would be at or about the health plan allowed rate, because nobody would think it's 14 times. Does the patient have a choice? I mean, when they get to LabCorp, do they have a choice as to where they can go get this lab, or other than I'll not get it, or I'll get it? Do you have a choice to go somewhere else? Well, there are two things they could work out. I mean, they don't have to... I'm talking about initially. How do they get to LabCorp? Is LabCorp the only one that does this? No, LabCorp and Quest do it, but it goes beyond the complaint. If you go to 1-800-LAB-TESTS and you pay out of pocket $50 for vitamin D, and this was in the letter that Nathaniel Nolan wrote a letter to LabCorp's CEO, and after he was billed $292, he went online and he saw that he could get a script to have the test done at LabCorp for $50. So he wrote a letter to the CEO at LabCorp saying you should be embarrassed charging me $292 when you charge $50 if I was going to pay for it online. I was only going to... I mean, you went to the whole... You started out and said, you know, that the patient in this instance would have made a determination not to get it. Maybe because they didn't need it. The doctor said you need it. But it seems to me there's something going on here. If you only can go to one place at LabCorp and you've got other places you can go, the question is how do you get there? Somebody sent you there. Something directed you to go to LabCorp, whether it's at a hospital or a doctor. And why? Because somebody has to have a knowledge this goes on too. But a lot more than what's in this case here before us. Because we're dealing with a 12-week, six-week. That's what they want. So I'll leave that alone. I mean, LabCorp may have a better parking lot. Or, you know, people go to different labs for all kinds of different reasons. Thank you, Your Honor. Thank you all very much. We'll ask the court to adjourn us for the day and we'll come down and recount.
judges: G. Steven Agee, James Andrew Wynn, Stephanie D. Thacker